Lawrence HALL et al.

v.

ST. HELENA PARISH SCHOOL BOARD and J. L. Meadows, Superintendent of Schools.

James WILLIAMS, Jr., et al.

v.

IBERVILLE PARISH SCHOOL BOARD et al.

Yvonne Marie BOYD et al.

v.

POINTE COUPEE PARISH SCHOOL BOARD, a corporation, Joseph G. Beaud, President, and Samuel P. Lorio, Superintendent.

Terry Lynn DUNN et al.

v.

LIVINGSTON PARISH SCHOOL BOARD, a corporation, Robert H. Harrison, President, and Marvin E. Curtis, Superintendent.

Donald Jerome THOMAS, a minor, by his father and next friend, Felton Thomas

v.

WEST BATON ROUGE PARISH SCHOOL BOARD, a corporation, and A. B. Couvillion, Superintendent.

Robert CARTER et al.

v.

SCHOOL BOARD OF WEST FELICIANA PARISH, a corporation, Thomas E. Stillman, President, and Jerome A. Broussard, Superintendent of Schools of West Feliciana.

Sharon Lynne GEORGE et al.

v.

C. Walter DAVIS, President, East Feliciana Parish School Board.

Welton J. CHARLES, Jr., et al.

v.

ASCENSION PARISH SCHOOL BOARD, a corporation, and Gordon Webb, Superintendent.

Civ. A. Nos. 1068, 2921, 3164, 3197, 3208, 3248, 3253 and 3257.

United States District Court
E. D. Louisiana,
Baton Rouge Division.

May 19, 1967.

A. P. Tureaud, New Orleans, La., for plaintiffs in Civ. A. Nos. 1068, 2921, 3164, 3197, 3208 and 3257.

Duncan S. Kemp, Dist. Atty., Amite, La., Jack P. F. Gremillion, Atty. Gen. of Louisiana, for defendants in Civ. A. No. 1068.

Sam C. Cashio, Dist. Atty., 18th Jud. Dist., Plaquemine, La., for defendants in Civ. A. No. 2921, 3164 and 3208.

Hugh Fleischer, Dept. of Justice, Civil Rights Div., Washington, D. C., intervenor in Civ. A. Nos. 2921, 3164 and 3179.

Duncan S. Kemp, Dist. Atty., 21th Jud. Dist., Amite, La., for defendants in Civ. A. No. 3197.

Jack P. F. Gremillion, Atty. Gen. of Louisiana, Harry J. Kron, Asst. Atty. Gen., for defendants in Civ. A. No. 3257.

Murphy W. Bell, Baton Rouge, La., and Collins, Douglas & Elie, New Orleans, La., for plaintiffs in Civ. Nos. 3248 and 3253.

Jack P. F. Gremillion, Atty. Gen. of Louisiana, Baton Rouge, La., and Richard H. Kilbourne, Dist. Atty., 20th Jud. Dist., Clinton, La., for defendants in Civ. A. Nos. 3248 and 3253.

WEST, District Judge.

In each of these consolidated cases either the attorneys for the plaintiffs or the United States Government as an intervening plaintiff, have filed motions for additional relief, seeking certain changes in the Plans for Desegregation of schools previously entered by this Court.

In considering the motions filed herein for additional or supplemental relief, I must start with a recognition of the fact that these cases were not among those considered by the Fifth Circuit Court of Appeals when its en banc decision of March 29, 1967 was rendered in United States of America et al. v. Jefferson County Board of Education et al., and the eight other cases consolidated therewith for hearing, 380 F.2d 385 (March 29, 1967), hereinafter collectively referred to as the Jefferson case. Consequently, since neither the record nor the facts involved in the cases now before this Court were before the Court of Appeals when it decided Jefferson, the specific decree rendered therein is, of course, not necessarily applicable to these cases. For this Court to take the position that it is bound to enter the decree formulated by the Appellate Court in Jefferson, without regard to the proofs offered in the present cases, merely because the Court of Appeals recognized what it believed to be a desirability of uniformity in decrees entered in cases of this sort, would be to recognize a fact which simply does not exist, i. e., that the Court of Appeals has the right to render advisory opinions. It simply does not have this right. A case, such as the ones here involved, is not properly before a Court of Appeals until the issues therein involved have been duly considered and passed upon by the proper District Court. It is the duty of a District Judge to perform his duties "according to the best of *his* abilities and understanding agreeably to the Constitution and laws of the United States." This I intend to do. After a judgment is rendered by me in these cases and reviewed by the Court of Appeals, I will, of course, faithfully abide by any man-

date that they might see fit to issue. But upon hearing a case presented to me, I must render *my* decision based upon the recorded facts and in accordance with what *I* believe to be the law of the land. The function of the Court of Appeals is to review what I have done, to affirm me if they feel I am right, and to reverse me if they believe I am wrong. I respectfully suggest that it is not their function to tell me in advance of hearing a case what decree I must enter therein, regardless of what the proofs may show. Furthermore, my understanding of the law is that it is the function of the Court to hear and adjudicate "cases and controversies." Generally speaking, when a plaintiff applies to a court for relief, he carries the burden of proving, by a preponderance of the evidence, that he is entitled to the relief he seeks. If he fails to carry this burden he cannot prevail. In such an instance the defendant is just as much entitled to a judgment in his favor as would the plaintiff be if he had successfully carried his burden of proof. I may seem a bit old fashioned in abiding by these time-tested principles of law, but I sincerely believe that they are still the law of the land. Search as I may, I fail to find any legal authority for departing from these basic principles of law merely because the case at hand is one involving civil rights. I do not quarrel with the end sought to be achieved, i. e., equal rights, opportunities and responsibilities for everyone in every field of endeavor, without regard to race, color, creed or national origin. But neither the impatience of the courts nor the exigencies of the moment can justify such a severe departure from established legal principles and procedures as seems to be suggested in Jefferson. The desired end may take longer to reach by following the rules, but the ultimate cost to everyone concerned will be much greater indeed if the rules are ignored.

As a matter of fact, it appears to me that the Court of Appeals in its Jefferson decision actually recognized the fact that the decree entered in that case was not necessarily the one to be entered in all other cases, even though it indicated

that, in its opinion, uniformity was to be desired. The actual test laid down by the Court in Jefferson, as I see it, was contained in its statement that ."*The only school desegregation plan that meets constitutional standards is one that works.*" There is, however, a suggestion in the opinion that the test might be: "Has the operation of the promised plan actually eliminated segregated and token-desegregated schools and achieved substantial integration?" I suggest that a close reading of the Court's opinion indicates that this is not really the test. For example, in the course of its opinion the Court said:

"The question to be resolved *in each case* is: How far have formerly *de jure* segregated schools progressed in performing their affirmative constitutional duty to furnish *equal educational opportunities* to all public school children?" (Emphasis Added.)

And elsewhere in the opinion the Court specifically recognizes the validity of the holding in Bell v. School City of Gary, 213 F.Supp. 819 (N.D.Ind.1963), aff'd 324 F.2d 209 (7 Cir. 1963), cert. den. 377 U.S. 924, 84 S.Ct. 1223, 12 L.Ed. 2d 216 (1964) at least insofar as that case concluded that, as to *de facto* segregation, the states have no affirmative duty to provide an *integrated* education. The test, as I understand it, is not whether "substantial integration" has been achieved in any particular school, but whether or not all students, regardless of race or color, have an honest, unfettered freedom of choice to attend the school of their choice in a unitary, integrated school *system*, devoid of any *de jure* segregation. In this regard the Court said:

"The Court imposed on the states the duty of furnishing an integrated school *system*, that is, the duty of "effectuat[ing] a transition to a racially non-discriminatory school *system*." (Emphasis Added.)

The Court then defines "Freedom of Choice" as follows: "Freedom of choice means the maximum amount of freedom and clearly understood choice in a bona fide unitary system where schools are not white schools or Negro schools—just schools." The opinion admittedly does not apply to schools where some measure of segregation might exist because of de facto segregation. Therefore, if the evidence shows that the Plan of Desegregation presently in operation has converted or is converting the school *system* to a unitary, integrated system, and that the plan in operation has resulted in an end of *de jure* segregation, and nothing remains but *de facto* or voluntarily imposed segregation, then the fact that "substantial integration" has not resulted insofar as any particular school is concerned in no way proves that the desegregation plan being employed does not meet the constitutional standards adopted by the Court in Jefferson. As the Court stated in Jefferson: "We leave the problems of de facto segregation in a unitary system to solution in appropriate cases by the appropriate courts."

The then Senator Humphrey said while explaining the Civil Rights Act to the members of Congress:

"The bill does not attempt to integrate the schools, but it does attempt to eliminate segregation in the schools. The natural factors, such as density of population, and the distance that students would have to travel are considered legitimate means to determine the validity of a school district if the school districts are not gerrymandered, and in effect deliberately segregated. The fact that there is a racial imbalance per se is not something which is unconstitutional."

The Court in Jefferson said: "We cannot impute to Congress an intention to repudiate Senator Humphrey's explanation of Section 604" of the bill, which pertained to desegregation of faculties. I must assume that the Court also does not impute to Congress an intention to repudiate the Senator's explanation of the bill as it pertains to desegregation of students. If this assumption is correct, it necessarily follows that if the desegregation plan presently in effect has, in fact, ended *de jure* segregation in the schools, and if, because of deliberate, free choice, *de facto* segregation continues to

exist, such a state of affairs would not require the conclusion that the plan in operation fails to meet constitutional standards. It is with these basic principles in mind that I approach a decision in these cases.

■ The question to be resolved is clear. The plaintiffs have filed motions for additional or supplemental relief. Their only assertion is that the decree previously entered in these cases is not the same as the decree entered by the Court of Appeals in Jefferson, and that they are entitled as a matter of law to a Jefferson type decree. The question before this Court is simply whether or not the plaintiffs have carried the burden of proving, by a preponderance of the evidence, that the decrees presently in effect do not meet constitutional standards, and whether or not they have proved by a preponderance of the evidence that they are entitled to any or all of the relief sought.

The record in these cases will show that plaintiffs produced absolutely no evidence whatsoever to show that there had been any impediment whatsoever under the existing plan of desegregation to the exercise of a free, unfettered choice of schools by all students, both white and colored. They produced no evidence to show that a single student, white or colored, has been improperly denied admission to the school of his choice under the plans presently in operation. They produced no evidence whatsoever to show or even indicate that the notice of the pupil's right to freedom of choice, or that the choice period has in any way been inadequate under the present plan. They produced no evidence to show that the choice forms used by the various schools here involved are in any way defective or onerous. No evidence was produced in any of these cases to show that any school official, or anyone else for that matter, has in any way improperly influenced a pupil's choice of schools. No evidence was produced to show that there has been any harassment, intimidation, threats, hostile words, or similar behavior used against those who would exercise their right to freedom of choice.

No evidence was produced to show that any pupil has been denied the right to transfer to a school offering special courses, nor was any evidence introduced to indicate that any new construction is contemplated by any of the school systems involved which has been designed with a view to furthering segregation in the public schools.

On the contrary, the evidence produced at the trial of these cases showed affirmatively that, as to these aspects of the plans presently in operation, no complaints have been made by anyone, and that the plans in operation, insofar as these aspects are concerned, are "plans that work." The evidence produced shows affirmatively that students who are remaining in the schools which they have heretofore attended are doing so because they *choose* to do so, and not because they are forced to do so and not because they have been denied any right to attend other schools. This is purely and simply *de facto* segregation. Thus, it is the opinion of this Court that the plaintiffs have completely failed to carry their burden of proving by a preponderance of the evidence that they are entitled to any change in the plans of desegregation presently in operation in these various school systems as far as the above mentioned portions of the plans are concerned. Their assertion that they are entitled to have the entire decree that was entered in Jefferson entered in these cases is without merit. When the Court of Appeals entered its decree in Jefferson it stated:

"We have carefully examined each of the records in these cases. In each instance the record supports the decree."

I have carefully examined the records in these cases, and I find that the records *do not* support a decree similar in all respects to that entered in Jefferson.

■ However, the evidence in these cases does show that changes in other portions of the Desegregation Plans or additions thereto are needed in order to meet current constitutional standards as defined by the Court of Appeals. These changes apply particularly to matters

pertaining to' speed of desegregation, pupil transportation, desegregation of faculty, staff, facilities, activities and programs and to school equalization. The evidence in the record supports a finding that the plans of desegregation currently in operation in these schools do not, in some or all instances, adequately provide for desegregated transportation, nor do they provide for desegregation of faculty and staff or for desegregation of facilities, activities and programs. Also, the plans fail to provide specifically for equalization of school facilities. Consequently, an order will be entered in each of these cases amending and/or supplementing the plans for desegregation presently in operation in accordance with the proofs adduced at the trial of these cases.

In amending or supplementing the existing plans, this Court will take into consideration the opinion in Jefferson, and will, as far as it conscientiously can, follow the admonitions contained therein. But when the orders to be issued herein by this Court deviate from the decree entered in Jefferson, it is because in the considered opinion of this Court neither the records in these cases nor the applicable law warrants strict adherence to the details of the Jefferson decree.

Orders in each of these consolidated cases will be entered accordingly.